**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 30, 2001**

*In re* HON. CHRISTOPHER BROWN (AFTER REMAND)
Judge of the Fiftieth District Court,
Pontiac, Michigan.

No. 111840

_____

**PER CURIAM**

This judicial disciplinary matter is before this Court after remand to the Judicial Tenure Commission (JTC) to determine whether statements made by respondent following an automobile accident resulted in judicial misconduct that was clearly prejudicial to the administration of justice. In *In re Brown*, 461 Mich 1291 (2000), this Court set forth several factors that were among the criteria to be used in evaluating judicial discipline cases. We then remanded the present

matter to the JTC for an application of the suggested factors to the facts of this case.  The JTC, in a June 23, 2000 supplemental decision and recommendation, found that respondent was "attempting to use the prestige of [his] office to gain a personal advantage" and, thus, recommended a sanction of suspension from the discharge of all judicial and administrative duties without pay for a period of fifteen days.  Upon review, we hereby adopt the JTC's recommended sanction of suspension from the discharge of all judicial and administrative duties without pay for a period of fifteen days.

I

These proceedings arise out of statements made by 50th District Court Judge Christopher C. Brown, respondent, following an automobile accident involving respondent and another driver.  The JTC filed a complaint and an evidentiary hearing was held.  Following the hearing, the master concluded in a report that respondent did not abuse his office.  The JTC's examiner then filed written objections to the report with the JTC.  On review, the JTC made the following findings of fact:

(1) Respondent, at all times hereinafter mentioned, was a Judge of the 50th District Court in the City of Pontiac, County of Oakland, State of Michigan.

(2) Respondent was involved in an automobile accident with Sue Lambouris on April 26, 1996.

(3) The Pontiac Police Department was notified of the accident, and that officers Darryl Cosby and Craig Pesco responded to the location of the accident.

(4) Respondent knew police officer Darryl Cosby.

(5) Respondent told the police officers that Sue Lambouris was speeding. Specifically, Respondent stated that Mrs. Lambouris was "doing 85 miles per hour."

(6) Respondent requested that Mrs. Lambouris' name be "run on L.E.I.N. [Law Enforcement Information Network] and ticketed."

On the basis of its findings of fact, which we adopt for purposes of this per curiam opinion, the JTC determined that respondent was "attempting to use the prestige of [his] office to gain a personal advantage" and that such conduct was "clearly prejudicial" to the administration of justice in violation of the Code of Judicial Conduct, Canons 1, 2A, 2B and 2C. The JTC then recommended that respondent be suspended from the discharge of all judicial and administrative duties without pay for fifteen days.

Upon review of the JTC's decision and recommendation, this Court remanded this matter to the JTC for the "articulation of standards of judicial discipline, and for the

application of those standards to the instant case." *In re Brown, supra.* As we stated in that case, the development of standards by the JTC will better enable the JTC to respond to "equivalent cases in an equivalent manner." Furthermore, the application of standards by the JTC will allow this Court to more meaningfully review the JTC's disciplinary recommendations. In *Brown, supra,* we articulated several factors that were *among* the criteria to be used in evaluating judicial discipline cases. The recommended factors are as follows:

> (1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;

> (2) misconduct on the bench is usually more serious than the same misconduct off the bench;

> (3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance propriety;

> (4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;

> (5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;

> (6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;

> (7) misconduct that involves the unequal

4

application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship. [461 Mich 1292-1293.]

After remand, the JTC filed a supplemental recommendation. In this recommendation, the JTC determined that respondent was "attempting to use the prestige of [his] office to gain a personal advantage." Consequently, the JTC again recommended that this Court suspend respondent from the discharge of all judicial and administrative duties for a period of fifteen days. The JTC, however, did not expressly apply the recommended factors as set forth in *In re Brown* for the reason that its membership had changed between the original recommendation and the remand. Therefore, before we "adopt, reject, or modify" the JTC's recommended discipline, we will engage in a brief analysis of the *Brown* factors as applied to Judge Brown himself.

## II

Upon review, we conclude that factors 1, 2, 4, and 5 are relevant to this case. In particular, factors 1 and 4 support the JTC's recommended discipline of respondent. Pursuant to factor 1, we find that respondent's conduct was part of a pattern or practice of misconduct rather than an isolated instance of misconduct. As the JTC stated in its recommendation for discipline, respondent had been admonished

5

by the JTC on four prior occasions for acts of misconduct.[1] Additionally, pursuant to factor 4, respondent's conduct implicated the appearance of impropriety. The record shows that respondent knew one of the investigating officers who arrived at the scene. This existing relationship, coupled with respondent's attempted direction to the officer concerning the type of investigation that he should conduct with regard to the other driver, gave rise to an appearance of impropriety and had the potential to erode the public's confidence in the judiciary.[2]

---

[1] Even if the dissent is correct that respondent's behavior is not properly characterized as part of a "pattern or practice" of misconduct, there is nothing at all inappropriate in the JTC taking into consideration in its proportionality decisions altogether unrelated instances of misconduct.

[2] We do not disagree with the dissent's characterization of the rules of conduct with regard to "judge-victims." *Post* at 7. However, unlike the dissent, we believe that respondent's conduct went well beyond a mere "report[ing] the underlying facts involved in the crime." *Post* at 4. Rather, in this case, the respondent directed the officer to take two very specific actions: (a) run Ms. Lambouris' name through the LEIN system, and (b) issue Ms. Lambouris a ticket. Though a fine line cannot always be drawn in these matters, the respondent's direction to the officer, in our judgment, was not in the nature of a mere call to investigation, it was not simply a spontaneous expression of anger or pique, and it was more than a generalized call to the officer to do something about an unfortunate situation. Rather, when made to an officer who was aware of respondent's judicial status, such direction, in our opinion, invoked respondent's judicial status in an inappropriate manner.

On the other hand, factors 2 and 5 mitigate against increasing respondent's sanction. Pursuant to factor 2, it is important to highlight that the misconduct at issue arose out of statements made pursuant to an automobile accident. The misconduct did not occur while respondent was on the bench. Additionally, pursuant to factor 5, the remarks made by respondent appear to have been made spontaneously and under at least some stress, with respondent having just been involved in an automobile accident. When the police officers arrived, respondent told the officers that Mrs. Lambouris was speeding at eighty-five miles an hour. With regard to this remark, the JTC found that "[r]espondent knowingly made a false statement." However, pursuant to the circumstances of this case, this Court concludes that this remark was merely a speculation concerning the rate of speed of the other driver. Concerning respondent's request that the officers search Mrs. Lambouris' name in the LEIN system and ticket her, we reach the same conclusion. Respondent's remark was merely a spontaneous reaction in the immediate aftermath of an automobile accident. After weighing the above factors, and applying them to the circumstances of this case, we believe that respondent's past disciplinary indiscretions, as well as the appearance of impropriety that resulted from respondent's statements to the police officers, one of whom he knew,

regarding the type of investigation that the officers should engage in was sufficient misconduct to warrant the adoption of the JTC's recommendation of discipline.  Thus, we hold that respondent be suspended from the discharge of all judicial and administrative duties without pay for a period of fifteen days.

Pursuant to MCR 7.317(C)(3), the Clerk is directed to issue the judgment order forthwith.

CAVANAGH, WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

8

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

*In re* HON. CHRISTOPHER BROWN (AFTER REMAND)
Judge of the Fiftieth District Court,
Pontiac, Michigan.                                          No. 111840

_____

CORRIGAN, C.J. (*dissenting*).

I respectfully dissent from the majority's decision to suspend respondent for fifteen days for certain statements he made in the aftermath of an automobile accident. I would hold that respondent's actions, while certainly not exemplary, did not constitute judicial misconduct because his conduct was not clearly prejudicial to the administration of justice.

### I

These proceedings arise from a car accident involving respondent and another driver in Pontiac. Pontiac police officers responded to a call for assistance and investigated. Respondent told an officer with whom he was acquainted that the other driver had been traveling at eighty-five miles an hour. He then requested that the officer run the other driver's name on the Law Enforcement Information Network (LEIN), and urged the officer to ticket the other driver. The officer did not, however, issue a ticket. The owner of the

other car later brought an action in 50th District Court to recover his insurance deductible.

The Judicial Tenure Commission (JTC) complaint alleged misconduct arising from (1) respondent's conduct at the accident scene, (2) respondent's transfer of the district court action to another judge, and (3) respondent's conduct during the hearing on the district court lawsuit. The complaint also alleged misconduct arising from respondent's conduct during an unrelated criminal case and his unrelated actions in presiding over uncontested and default matters involving his court officer.

At the conclusion of an evidentiary hearing, the master determined that the examiner failed to establish judicial impropriety and that respondent did not violate the code of judicial conduct, court rules, or the constitution. The master found that respondent "informed the officers of [the other driver's] excessive speed (the testimony varies between 85 and 50 miles per hour) and . . . stated his desire to have [the other driver] run on a lien [sic] machine and ticketed . . . ." The master further found that reason existed to believe that the other driver had been speeding, although the evidence did not support respondent's claim that the car had been traveling at eighty-five miles an hour. The master characterized respondent's statement that the other car was

2

traveling "85 miles per hour" as a "hyperbolic exaggeration and not a deliberate falsification, similar perhaps to claiming that 'she was going like a bat out of Hell.'" The master rejected all the remaining allegations in the complaint.

The JTC affirmed the master's finding that respondent made the statements at the accident scene, but rejected the master's conclusion that respondent had not abused the prestige of his office. The JTC found that respondent's conduct violated Canons 1 and 2(A)-(C) of the Code of Judicial Conduct.[3] It found that respondent's conduct constituted

---

[1] Canon 1 provides in part that "[a] judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved."

Canon 2(A)-(C) provides:

A. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

B. A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary. Without regard to a person's race, gender, or other protected personal characteristic, a judge should

(continued...)

3

misconduct under MCR 9.205(C)(4) because it was clearly prejudicial to the administration of justice. The JTC adopted the master's findings and conclusions regarding the other allegations of misconduct. It recommended that this Court suspend respondent for fifteen days.

## II

In this case, the JTC recommends discipline solely on the basis of respondent's conduct at the accident scene. Thus, while the complaint certainly alleged other misconduct, I have confined my review solely to judicial misconduct arising from respondent's statements to the investigating officers because this Court may discipline a judge only "[o]n recommendation of the judicial tenure commission." Const 1963, art 6, § 30; see *In re Mikesell,* 396 Mich 517, 524-527; 243 NW2d 86 (1976). I conclude that the JTC failed to prove by a preponderance of the evidence[4] that respondent attempted to use the prestige of

---

(...continued)
> treat every person fairly, with courtesy and respect.

> C. A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not use the prestige of office to advance personal business interests or those of others. A judge should not appear as a witness in a court proceeding unless subpoenaed.

[2] *In re Loyd,* 424 Mich 514, 521; 384 NW2d 9 (1986).

4

his office to gain a personal advantage and that his conduct was *clearly* prejudicial to the administration of justice.

In my view, the determination whether respondent's conduct was clearly prejudicial to the administration of justice hinges on respondent's intent in making statements to the officers at the accident scene. The master found that respondent was "shaken, excited and emotional" after the accident. The master further characterized respondent's statement regarding the speed of the other driver's car as "hyperbole." I would defer to those findings because, although this Court reviews the record de novo, *In re Loyd,* 424 Mich 514, 521; 384 NW2d 9 (1986), we accord deference to the master's ability to observe witnesses' demeanor and evaluate their credibility. *Id.* at 535. I thus defer to the master's credibility finding that respondent did not intentionally lie to the officer. I am frankly puzzled by the JTC majority's finding of an intentional falsehood. They gave no reason for concluding that the master erred in his contrary credibility determination.[5]

---

[3] Under MCR 9.221(B), the JTC must make written findings of fact and conclusions of law along with its recommendations for action, but may adopt the master's findings, in whole or in part, by reference. In light of the master's superior position for purposes of evaluating the credibility of witnesses, however, it is incumbent on the JTC to explain its reasons for rejecting a master's finding that turns on such a determination. Moreover, absent a hearing at which the

(continued...)

5

I further agree with the majority's characterization of respondent's statement at the accident scene as a "spontaneous speculation" induced by "stress" in the immediate aftermath of an automobile accident.  I accept and see no clear error in the finding of the Master that Judge Brown's statement was hyperbole.  Further, I accept the master's finding that Judge Brown had no insidious motive.

In light of this conclusion, I would not hold that Judge Brown knowingly and intentionally attempted to use the prestige of his office to gain a personal advantage.  I cannot say with any degree of certainty that he attempted to misuse the prestige of his office to gain a personal advantage.  His conduct seems to me equally likely the spontaneous reaction of a shaken accident victim.

The majority rule is that a judge-victim who is acquainted with the police officers who are conducting an investigation may provide a report about the relevant facts, but cannot recommend any action on the basis of those facts.  Thus, a judge who is a victim of an armed robbery may report the underlying facts involved in the crime, but may not say,

---

(...continued)
witnesses actually testify before the JTC, MCR 9.219, I question whether this Court should reject the master's finding in favor of a contrary finding by the JTC.

6

"There's the robber—arrest that man."[6]  The direction to arrest may demonstrate a misuse of office to advance personal interests in recovering the judge's stolen property.

Next, I cannot join the conclusion that Judge Brown's statements at the accident scene were part of a "pattern and practice" of misconduct on the basis of prior JTC admonitions against Judge Brown.  Judge Brown's excited utterances at the accident scene were unique, isolated events, different in kind from the events and statements that formed the basis of the prior JTC admonitions.  I cannot join the conclusion that Judge Brown's conduct at the accident scene demonstrates a pattern and practice of misconduct.

I would reject the JTC recommendation in this case because respondent's conduct at the accident scene was not clearly prejudicial to the administration of justice.  The record does not reflect that the other driver heard respondent's remarks.  Nor does it establish that respondent's statements influenced the officer's decision to issue a ticket.  That a motorist whose vehicle has been struck in an accident would request in the immediate aftermath that the responding officer ticket the driver of the other car is not unusual.  That a judge, still shaken from the accident, would

_____

[6] While an armed robbery is a *crime*, not an *accident*, both are startling events likely to trigger in the victim spontaneous, excited utterances.

7

make a similar request is not prejudicial to the administration of justice. Moreover, respondent's comment requesting a LEIN check does not, under the circumstances of this case, elevate respondent's conduct to a level that clearly prejudices the administration of justice. The master found that respondent acted without an insidious motive. Accordingly, I would decline to impose discipline on the basis of respondent's conduct at the scene of the accident.[7]

---

[7]Assuming that respondent's actions constituted misconduct, the misconduct would not warrant a suspension. I also part company from my colleagues in their application of the governing principles set out in our prior order to these facts:

> While we do not purport to substitute our judgment for that of the JTC in this regard, some of these standards are obvious. For example, everything else being equal:
>
> (1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
>
> (2) misconduct on the bench is usual more serious than the same misconduct off the bench;
>
> (3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;
>
> (4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;
>
> (5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated
> (continued...)

### III

I conclude that respondent's  were not clearly prejudicial to the administration of justice. I would therefore reject the JTC recommendation to discipline respondent. Accordingly, I dissent.

---

[7](...continued)
or deliberated;

    (6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;

    (7) misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship. [461 Mich 1294-1295.]

Application of these factors to this case suggests the lightest form of discipline for those members of this Court who conclude that respondent was engaged in judicial misconduct—a censure. Respondent's acts were spontaneous, isolated, occurred off the bench, and, at most, gave the appearance of impropriety. Respondent's conduct did not implicate the actual administration of justice, and did not affect the ability of the justice system to discover the truth in a case. Moreover, the alleged misconduct does not involve the unequal application of justice. Under the circumstances of this case, a suspension is not appropriate.

9